## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Petitioner,<br><br>v.<br><br>$41,874.00, MORE OR LESS,<br>IN UNITED STATES CURRENCY, and<br><br>$79,010.00, MORE OR LESS,<br>IN UNITED STATES CURRENCY,<br>　　　　　Respondents. | §<br>§<br>§<br>§　CIVIL ACTION NO. 6:24-CV-559<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Petitioner United States, by and through the United States Attorney for the Western District of Texas, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

### I.　　NATURE OF THE ACTION

1. This action is brought by the United States seeking forfeiture to the United States of the following property: $41,874.00, More or Less, in United States Currency, and $79,010.00, More or Less, in United States Currency, (hereinafter "Respondent Currency").

### II.　　STATUTORY BASIS FOR FORFEITURE

2. This is a civil forfeiture action *in rem* brought against the Respondent Currency for violation of 18 U.S.C. §1956(a)(1)(A)(i) and 21 U.S.C. §§ 841 and 846, and subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. §§ 881(a)(4) and (a)(6).

**Title 18 U.S.C. § 1956.  Laundering of monetary instruments**
　　(a)

**(1)** Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

**(A)**

**(i)**

with the intent to promote the carrying on of specified unlawful activity;

**Title 21 U.S.C. § 841 Controlled Substance Violation**

**(a)** Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally –
  **(1)** to manufacturer, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

**Title 21 U.S.C. § 846 Controlled Substance Violation**

Any person who attempts or conspires to commit any offense defined in the subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**Title 18 U.S.C. § 981(a)(1)(A) Civil forfeiture**

**(a)(1)** The following property is subject to forfeiture to the United States:

**(A)** Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

**§ 881. Forfeitures**
**(a) Subject property**
The following shall be subject to forfeiture to the United States and no property right shall exist in them:
…
**(4)** All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).

**(6)** All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

### III. JURISDICTION AND VENUE

3. Under 28 U.S.C. § 1345 the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), the Court has jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Currency under 28 U.S.C. §§ 1355(b) and 1395.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this District and because the Respondent Currency are found in this District. *See also* 28 U.S.C. § 1395(b).

5. The Respondent Currency was seized in Hearne, Texas, located in the Western District of Texas, on May 14, 2024, by the Drug Enforcement Administration and Hearne Police Department. The Respondent Currency were transferred to the custody of the United States Marshals Service, within the jurisdiction of the United States District Court, Western District of Texas, and shall remain within the jurisdiction of the court pending litigation of this case.

### IV. FACTS IN SUPPORT OF FORFEITURE

6. On May 14, 2024, Hearne Police Department officers stopped a black SUV for a traffic violation and identified the driver and passenger as Devante Simmons (driver) and Nicoli Jason (passenger).

7. Simmons admitted that he did not have a driver's license, and law enforcement identified him through his name and date of birth.

8. Simmons was not eligible for a driver's license and had an outstanding arrest warrant out of Wise County, Texas for failure to appear on a drug charge.

9. Simmons said he was traveling to Dallas, Texas to take care of the warrant.

10. When asked about the odor of marijuana coming from the vehicle, Simmons stated he has smoked earlier that day.

11. Due to the odor of marijuana, law enforcement conducted a probable cause search of the vehicle, and during the search, found a black shopping bag with "Versace" printed on it in the third-row seat containing multiple large bundles of United States Currency in the amount of $79,010.00.

12. Jason was detained and placed in another patrol car, separating him from Simmons.

13. The search was continued, and the officers located a shoe box also containing multiple large bundles of United States Currency containing approximately $41,874.00, hidden in the back cargo space of the vehicle inside the spare tire compartment.

14. Law Enforcement also found a Gatorade bottle in the cup holder with several small nuggets of marijuana.

15. Simmons was read his Miranda rights, and agreed to speak to the officers about how they obtained the money and for what purpose.

16. Simmons stated the money was given to him by his girlfriend to purchase another vehicle.

17. During a subsequent interview, Simmons informed law enforcement that he received the money from promoting party events.

18. Jason called his uncle while in the back of the patrol car.

19. Law enforcement confiscated the phone from Jason and asked about the money found in the vehicle.

20. According to Jason, the money was to purchase a dog in Dallas, but when asked again, he said it was payment for a dog he had sold.

21. Officers handed Jason his phone and asked to provide proof of the receipts he claimed to have on his phone. Jason instead called his Uncle Kendrick Perkins, who Jason refers to as "Unc."

22. Perkins informed law enforcement he had given Jason $130,000.00.

23. Later, Jason stated Simmons and he were traveling to Dallas, Texas to purchase a pink fluffy French "Frenchie" Bulldog.

24. Jason further stated that he and his Uncle Kendrick Perkins owned a kennel company called "Big League Exotics." According to Jason these exotic French Bulldogs can cost upwards of $150,000.00 per puppy.

25. Law Enforcement reviewed in-car video of the detention of Jason; Jason makes a phone call using his cell phone and advises Unc that he and Simmons were detained by law enforcement, and he had "the bag" with him.

26. Jason proceeds to ask Unc what he should tell the police.

27. "Unc" tells Jason to tell the police they were delivering the money to him.

28. During a FaceTime video call, Unc claims he gave Simmons and Jason $130,000.00 to purchase two dogs.

29. On May 15, 2024, Simmons was escorted from the holding cell to an interview room, read his Miranda warning, and agreed to speak with law enforcement.

30. Simmons was asked to describe his trip to Hearne beginning with when he awoke on May 14, 2024. Simmons said he woke up in Beaumont, Texas, took his nephews to school, and his two children to their grandmother's house.

31.     Simmons then called his uncle who said he was "looking at these little cars."

32.     According to Simmons, his uncle said the seller of the cars also had two dump trucks for sale.

33.     Simmons said that his girlfriend went to the bank and withdrew $12,000.00.

34.     Simmons said he had $30,000.00 from savings and some other money from his girlfriend's tax return.

35.     Simmons said he keeps the money in a safe at his residence.

36.     After gathering the money, Jason called Simmons and said he left Beaumont at 8:00pm to drive to Houston where he picked Jason up.

37.     Simmons said that Jason also intended to buy a truck with the money.

38.     Simmons said they were driving to his uncle's house in Fort Worth, Texas, as he did not know where the trucks were located or how much they would cost.

39.     Simmons denied consent to search his cell phone.

40.     On a recorded jail call, Simmons called his girlfriend.

41.     During the call, Simmons' girlfriend stated, "they have been waiting for you to call." The female then created a conference call with Unc.

42.     Simmons tells Unc law enforcement requested consent to search his cell phone, which he denied.

43.     Simmons tells Unc he told law enforcement he and Jason were going to buy a truck.

44.     Unc tells Simmons, Jason told police they were going to buy a dog, then told Simmons to do the same.

45. On May 15, 2024, law enforcement performed an open-air sniff of the currency; three sniffs were performed with three additional empty/control boxes present. Each box containing currency was identified by the Police K9.

46. Law enforcement ran a Texas Workforce Check (TWC) for both Simmons and Jason.

47. Simmons' TWC report came back with only $624.00 in the first quarter of 2022.

48. Jason's TWC report had not employment history.

49. Based on the foregoing facts, it is reasonable to believe that the Respondent Currency is subject to forfeiture given (1) the absence of legitimate work history for Simmons and Jason; (2) the conflicting stories Jason and Simmons provided for where the money came from and what it was intended to be used for; (3) the K9 positive alerts to the presence of narcotics on the Respondent Currency; (4) the way the currency was bundled and hidden; and (5) the statements made through the interview and recorded jail calls.

50. The Respondent Currency were obtained from the sale of narcotics or were intended to be used to purchase narcotics. In other words, it is reasonable to believe that the Respondent Currency constitutes property involved in a transaction related to drug trafficking, and the currency is constitutes or is derived from proceeds of drug transactions. Therefore, the Respondent Currency are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (a)(6) for knowing violations of 21 U.S.C. §§ 841 and 846.

51. The Respondent Currency are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1) for knowing violations of 18 U.S.C. §1956(a)(1)(A)(i) as the Respondent Currency was intended to promote a specified unlawful activity, drug trafficking.

## V. **PRAYER**

WHEREFORE, Petitioner United States prays that due process issue to enforce the forfeiture of the Respondent Currency, that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a warrant for an arrest in rem be ordered, that the Respondent Currency be forfeited to the United States, that the Respondent Currency be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

Respectfully submitted,

JAIME ESPARZA
United States Attorney

By:   /S/_____
MARK TINDALL
Assistant United States Attorney
Texas Bar #24071364
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5854
Email: mark.tindall@usdoj.gov
Attorneys for the United States of America

---

[1] Appendix A, which is the Notice of Complaint of Forfeiture and which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Currency.

## **VERIFICATION**

Special Agent Jeff Stewart declares and says that:

1. I am a Special Agent with the Drug Enforcement Administration DEA assigned to the Waco Resident Office, and am the investigator responsible for the accuracy of the information provided in this litigation.

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22 day of October, 2024.

Jeff Stewart, Special Agent
Drug Enforcement Administration
Waco Resident Office